UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA

**FILED**

NOV ~ 3 2008

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Jess Brasier, | ) |
| | ) |
| Defendant. | ) |

No. 2:08-mj-391 KJM

**DETENTION ORDER**

A.  <u>Order For Detention</u>
After conducting a further detention hearing pursuant to 18 U.S.C. § 3142(f) of the Bail Reform Act, the Court orders the above-named defendant detained pursuant to 18 U.S.C. § 3142(e) and (I)

B.  <u>Statement Of Reasons For The Detention</u>
The Court orders the defendant's detention because it finds:
<u>X</u>    By a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required.
<u>X</u>    By clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community.

C.  <u>Findings Of Fact</u>
The Court's findings are based on the evidence which was presented in Court and that which was contained in the Pretrial Services Report, and includes the following:
<u>X</u>    (1) Nature and Circumstances of the offense charged:
    <u>X</u>    (a)  The crime: 21 U.S.C. §§ 841, 846
    _____ (b)  The offense is a crime of violence.
    _____ (c)  The offense involves a narcotic drug.
    _____ (d)  The offense involves a large amount of controlled substances.
_____ (2) The weight of the evidence against the defendant is high.
<u>X</u>    (3) The history and characteristics of the defendant including:
    (a)    General Factors:
        _____ The defendant appears to have a mental condition which may affect whether the defendant will appear.
        _____ The defendant has no known family ties in the area.
        _____ The defendant has no known steady employment.
        _____ The defendant has no known substantial financial resources.
        _____ The defendant is not a long time resident of the community.
        _____ The defendant does not have any known significant community ties.
        <u>X</u>  Conduct of the defendant: Maintenance of significant amounts of marijuana, in concealed containers, at primary residence while on pretrial release in pending case 08-CR-453-LKK (Exs. 5-6, 8-10); maintenance during pretrial release of responsibility for receipt by mail of PG&E bill for neighboring property at 22 Nelsier Place (Ex. 2; Exs. C, D), at which significant amounts of marijuana were found in trailer with cache of firearms (Ex. 18 at 10-21); inferential conduct based on finding of PG&E bill mailed to defendant's primary residence and copy of criminal complaint 08-mj-324 GGH inside trailer at 22 Nelsier Place (Exs. 1, 2), which inference has not been overcome by argument in face of rebuttable presumption raised by current charges.  (Exhibits, admitted at hearing, attached.)
    _____ The defendant has a history relating to drug abuse.
    _____ The defendant has a significant prior criminal record.
    _____ The defendant has a prior record of failure to appear at court proceedings.

Whether the defendant was on probation, parole, or release by a court;

    At the time of the current arrest, the defendant was on:

    ___  Probation

    ___  Parole

    _X_  Release pending trial in 08-CR-453-LKK.

  (b)    Other Factors:

    ___  The defendant is an illegal alien and is subject to deportation.

    ___  The defendant is a legal alien and will be subject to deportation if convicted.

    ___  Other: _____ _____ _____

            _____ _____ _____

            _____ _____ _____

            _____ _____ _____

_X_    (4) <u>Rebuttable Presumptions</u>

In determining that the defendant should be detained, the court also relied on the following rebuttable presumption(s) contained in 18 U.S.C. § 3142(e), which the court finds the defendant has not rebutted:

___  a.  (1) The crime charged is one described in § 3142(f)(1) <u>viz.</u>

    ___  (A) a crime of violence; or

    ___  (B) an offense for which the maximum penalty is life imprisonment or death; or

    ___  (C) a controlled substance violation that has a maximum penalty of ten years or more; or

    ___  (D) a felony and defendant previously was convicted of two or more of the offenses described in (A) through (C) above <u>and</u>

    (2)  Defendant previously has been convicted of one of the crimes listed in subparagraph (1)(A)-(C), above <u>and</u>

    (3)  The offense referred to in subparagraph (2) was committed while defendant was on release pending trial <u>and</u>

    (4)  Not more than five years has elapsed since the date of conviction or release from imprisonment for the offense referred to in subparagraph (2).

_X_  b.  There is probable cause to believe that defendant committed an offense for which a maximum term of imprisonment of ten years or more is prescribed

    _X_  in the Controlled Substances Act, 21 U.S.C. §§ 801, et seq.,

    ___  the Controlled Substances Import and Export Act, 21 U.S.C. §§ 951, et seq.,

    ___  the Maritime Drug Law Enforcement Act, 46 U.S.C. App. §§ 1901, et seq., or

    ___  an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b.

    ___  an offense under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

D.    <u>Additional Directives</u>

Pursuant to 18 U.S.C. § 3142(i)(2)-(4), the Court directs that:

    The defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; and

    The defendant be afforded reasonable opportunity for private consultation with his counsel; and

    That, on order of a court of the United States, or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

DATED: ___11/03/08___

                        U.S. MAGISTRATE JUDGE

*Lauren Cusick*
*916 498 5700*

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA



ORIGINAL
FILED

SEP 17 2008

oOo

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES OF AMERICA

v.

JESS BRASIER and DEAN TESKEY

## CRIMINAL COMPLAINT

CASE NUMBER:

**2 0 8 - M - 0 3 2 4**   GGH

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.  From on or about **August, 2008,** through **September 16, 2008,** in the Eastern District of California, the above named defendant:

▸ **Did conspire to knowingly and intentionally manufacture over 100 plants of marijuana,**

in violation of **Title 21**, United States Code, Sections **846 and 841(a)(1)**.  I further state that I am a Special Agent with DEA and that this complaint is based on the following facts:

▸ Please see the attached AFFIDAVIT, which is hereby incorporated and made part of this complaint.

Approved as to form: _____

Michael M. Beckwith, AUSA

_____
Signature of Complainant
Brian Nehring
Special Agent, DEA

Sworn to before me, and subscribed in my presence on

_Sept 17, 2008_          in   Sacramento, California

Date                                      City and State

GREGORY G. HOLLOWS          GREGORY G. HOLLOWS

Name and Title of Judicial Officer          Signature of Judicial Officer



GOVERNMENT EXHIBIT

## AFFIDAVIT OF SPECIAL AGENT BRIAN NEHRING:

STATE AND DISTRICT OF EASTERN CALIFORNIA

COUNTY OF SACRAMENTO

I, Brian Nehring, Special Agent of the Drug Enforcement Administration (DEA), being duly sworn, depose and state:

1. I am a Special Agent of the Drug Enforcement Administration and have been so employed since 1991. I am currently assigned to the San Francisco Field Division, Sacramento District Office of the DEA, specifically assigned to investigate federal narcotics offenses.

2. This affidavit is made in support of the issuance of a Criminal Complaint charging Jess BRASIER and Dean TESKEY with violations of Title 21 U.S.C. Section 841(a)(1) and 846, Manufacture of Marijuana (a schedule I controlled substance) and Conspiracy.

3. During 2008, I initiated an investigation of a suspected marijuana cultivation operation being conducted in Oroville, California by Jess BRASIER.

4. Property records inquiries with Lexis/Nexis revealed that BRASIER was variously listed as the property owner of 57 Nelsier Place, Oroville, California; 22 Nelsier Place Oroville, California; and 2091 Debbie Ann Court, Oroville, California.

5. I conducted surveillance of these locations during August of 2008 and observed that 57 Nelsier Place was located at the dead-end of a short street off of Lincoln Boulevard and that 22 Nelsier Place was the property bordering 57 Nelsier Place immediately to the east. I further observed that Debbie Ann Court was the first street north of Nelsier Place and that the property at 2091 Debbi Ann Court bordered 57 Nelsier Place to the east and 22 Nelsier Place to the north and that these three properties constituted an apparent rectangular block.

6. I subsequently learned from Pacific Gas and Electric (PG&E) that utilities service at 57 Nelsier Place, Oroville, California and 22 Nelsier Place, Oroville, California were currently in the name of Jess BRASIER and had been for several years.

7. Inquiries with the California Department of Motor Vehicles (DMV) revealed that both Jess BRASIER and Dean TESKEY had most recently provided resident addresses of 57 Nelsier Place, Oroville, California and currently had vehicles registered at this address. TESKEY had previously listed 22 Nelsier Place, Oroville, California as a resident address.

1

8. Aerial surveillance of these properties conducted during August of 2008 documented marijuana cultivation operations occurring at 57 Nelsier Place, 22 Nelsier Place and 2091 Debbie Ann Court, Oroville, CA.

9. S/A Amie Anderson obtained a federal search warrant these three locations and agents served these search warrants on September 16th, 2008.

10. BRASIER and TESKEY were located on the property located at 57 Nelsier Place at the time the search warrant was executed. BRASIER was located inside the living room of the residence with his two grandsons. Several pounds of manicured marijuana bud and several loaded pistols were located in this same area. TESKEY was located between the two-story residential barn and the greenhouse just to the north of, and connected to, the main residence where BRASIER lived.

11. During a search of the upstairs portion of the residential barn which was found to contain indicia in the name of TESKEY throughout as well as numerous firearms, agents located over 150 marijuana plants under grow lights between the two rear rooms of the structure.

12. During a search of the rest of the property to the north of these two residential structures, agents located two outdoor marijuana gardens and a large indoor marijuana garden under lights inside of a large green house structure; there were over 80 plants located in this area. All of these plants were several feet tall and many of them were between 10 and 12 feet tall.

13. Upon proceeding to 22 Nelsier Place, agents located approximately 90 large (between 3 and 5 feet tall) marijuana plants between the rear yard and the side yard of the property. I observed that the mobile-home type structure on the property was apparently unoccupied and in the process of being renovated.

14. Upon proceeding to 2091 Debbie Ann Court, agents contacted Jason HILL at the trailer on the property. Agents also located over 70 large marijuana plants on this property and another approximately 40 large marijuana plants in a fenced in area across the pasture immediately to the north.

15. Task Force Officer Chou Vang read BRASIER his Miranda Rights and he indicated that he understood his rights and agreed too speak to agents. BRASIER related that he had been growing marijuana for a few years on the properties he owned at 57 Nelsier Place and 22 Nelsier Place, Oroville, California. BRASIER stated that he was renovating the property next door at 22 Nelsier Place and was in the process of attempting to sell the property to a relative. BRASIER also stated that he rented the upstairs portion of the barn next to his house to TESKEY who had lived on the property for a few years and who assisted him. BRASIER stated that he knew there were marijuana plants on the top floor of the barn but they belonged to TESKEY. BRASIER claimed the rest of the marijuana plants on the property and next door at

2

22 Nelsier Place.   BRASIER also admitted ownership of the loaded pistols in his living room as well as the manicured marijuana.

16. I read TESKEY his Miranda Rights and he indicated that he understood his rights and agreed too speak to me. TESKEY stated that he had been living at 57 Nelsier Place for a few years. TESKEY stated that he was growing marijuana upstairs in the barn where he lived but claimed it was not for distribution and that he was growing to cultivate seeds. TESKEY admitted that he owned the multiple firearms located throughout the living quarters upstairs in the barn. TESKEY stated that he had assisted BRASIER in harvesting and manicuring marijuana on all of his properties.

17. I read HILL his Miranda Rights and he indicated that he understood his rights and agreed too speak to me. HILL stated that he was BRASIER's son-in-law and lived on Debbie Ann Court with BRASIER's daughter. HILL stated that he had been growing marijuana on the property and had been giving his wife money to pay the mortgage on the property because BRASIER and HILL's wife (BRASIER's daughter) had told HILL that the property had been signed over into HILL's wife's name.   HILL stated that he had trusted BRASIER and his wife but had just recently found out that he had been lied to by his wife, that this transfer of property ownership had never occurred and that the property was still in BRASIER's name.

18. Based on the foregoing, I believe that probable cause exists to believe that Jess BRASIER and Dean TESKEY did on September 16th, 2008 Manufacture Marijuana and Conspired to do so in violation of Title 21 U.S.C. Sections 841(a)(1) and 846.

Subscribed to and sworn before me this *17*th day of September, 2008 at Sacramento, CA.

_Brian Nehring, DEA_
Brian Nehring, DEA

GREGORY G. HOLLOWS
GREGORY G. HOLLOWS
US Judge Magistrate

3

## AFFIDAVIT OF SPECIAL AGENT AMIE ANDERSON IN SUPPORT OF SEARCH WARRANT AND ARREST WARRANT

I, Amie Anderson, being duly sworn state the following:

### BACKGROUND AND EXPERTISE

1. I am a Special Agent of the United States Department of Justice, Drug Enforcement Administration (DEA) and have been so employed since September 2007. I am currently assigned to the DEA Sacramento District Office, Sacramento, California. In my current position, I am responsible for, among other things, investigating criminal violations of federal statutes including Title 21 of the United States Code.

2. I have received formal training in excess of 700 hours in the field of narcotics investigations at the DEA Training Academy in Quantico, Virginia. This academy included instruction in, but not limited to: Basic Narcotics Investigations, Drug Identification, Familiarization with United States Narcotics Laws, Financial Investigations and Money Laundering, Identification and Seizure of Drug-related Assets, Undercover Operations, and Tactical Training.

3. In addition to the above, I have worked in Atlanta, Georgia as a Certified Police Officer for the Fulton County Police Department for seven years. In 2002, I became a Nationally Certified Narcotic K-9 Drug Handler. I have been involved in numerous narcotics investigations resulting in arrests, surveillance, and the execution of over two hundred (200) State and Federal Warrants for controlled substances and/or related paraphernalia, indicia, and other evidence of the commission of felony violations of Federal or State law. As a result, I have encountered and become familiar with various tools, methods, trends, paraphernalia, and related articles utilized by various traffickers and organizations in their efforts to import, conceal, manufacture, and distribute controlled substances.

4. I have participated in investigations involving cocaine, crack cocaine, heroin, marijuana, and methamphetamine which have resulted in the seizure of illicit drugs and drug-related evidence. During these investigations, I have performed tasks related to the enforcement of these investigations, including but not limited to: executing federal search warrants and arrest warrants; utilizing confidential sources for the purchase of narcotics; participating in surveillance operations, observing and recording movements of persons trafficking in drugs and those suspected of trafficking in drugs.

5. As result of my experience and training, I know that traffickers dealing in various quantities of controlled substances, or those that assist in such ventures, often create and maintain accounts and records relating to those transactions. Such records and accounts often detail manufacture, movement, acquisition, distribution, and the location of various amounts of money and narcotics. They also may indicate the

1

identity of co-conspirators. I have seen these records maintained in physical form, such as in papers, notebooks, ledgers, and in electronic form, such as on a computer. In my experience, drug traffickers tend to keep these accounts and records in their residence and in the areas under their control. It is my training and experience, that in the case of drug dealers, evidence is likely to be found where the dealers live. **United States v. Angulo-Lopez**, 791 F.2d 1394, 1399 (9th Cir. 1986). I am also aware that, recently, most people who rent or own a home also have a personal computer they keep in their home. In my training and experience, where criminal activity is long-term or ongoing, equipment and records of the crime will be kept for a significant period of time. **United States v. Greany**, 929 F.2d 523, 525 (9th Cir. 1991).

6.   Based upon my experience and training, I have learned that drug traffickers often place their assets in names other than their own to avoid detection of those assets by law enforcement and the Internal Revenue Service (IRS); that those persons are commonly family members, friends, and associates who accept title of assets to avoid discovery and detection; that traffickers also often place assets in the ownership of corporate entities to avoid detection by law enforcement agencies and although these assets are in other individual(s) or corporate names, the traffickers continue to use these assets and exercise dominion and control over them. Typically traffickers keep records of those registrations and transactions in their residence.

7.   I have learned that large-scale drug traffickers often have on hand large amounts of United States currency, often in excess of $2000, in order to maintain and finance their ongoing business.

8.   It has been my experience that drug traffickers often keep large sums of currency, caches of drugs, financial instruments, precious metals, jewelry, automobiles and other items of value and/or proceeds of drug transactions in their residence or in the areas under their control.

9.   In my experience, drug traffickers often do not have a legitimate form of employment. It has also been my experience that drug traffickers often keep financial records relating to money and assets acquired through narcotics transactions, and the disposition of such money or other assets, in their residence or in the areas under their control

10.  In my experience, traffickers commonly have in their possession, that is, on their person, at their residence and in the areas under their control, firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons. Such firearms are used to protect and secure a traffickers property. Such property may include, but is not limited to, narcotics and other dangerous drugs, jewelry, narcotic paraphernalia, books, records, ledgers and quantities of currency.

11.  In my experience, traffickers commonly have in their possession, that is on their person, at their residences, and their vehicles, and in the areas under their control

2

packs, power cords, extension cords, generators, air conditioning units, fans, heat pumps, shovels, rakes, brush clearing equipment, handsaws, pruning shears, hand-held fertilizer/water tanks, herbicides, starter pots, planter pots, grow pots, alligator clips, baggies, rolling papers, cigarette packs, small medicine containers, glass and plastic vials, rolled up papers for holding seeds, sifters, scales and other weighing devices, drying screens, paper bags, pouches, backpacks, burlap bags, plastic storage containers; this equipment may include instructional books and/or magazines for growing marijuana, such as: High Times, Marijuana Growers Guides, Sinsemillia Tips, Marijuana Potency, Marijuana Botany, Marijuana, and other marijuana publications.

18.  It is my opinion, based on my training and experience, and the training and experience of other law enforcement investigators with whom I have spoken, that the items listed in Attachment B are often associated with the distribution of controlled substances, including crack cocaine (i.e., cocaine base), as well as the proceeds from such illegal operations.

19.  The facts set forth in this affidavit are known to me as a result of my personal participation in this investigation, through conversations with other agents and detectives who participated in the investigation, and from reviewing official reports, documents, and other evidence obtained as a result of this investigation. The following is not an exhaustive list of the facts I learned during the course of this investigation, but only the facts I believe support a finding of probable cause to search the requested locations.

## PROBABLE CAUSE TO SEARCH REQUESTED LOCATIONS

20.  This affidavit is being submitted in support of a request to search the properties located at 6332 Lincoln Boulevard, Oroville, California, 22 Nelsier Place, Oroville, California, 57 Nelsier Place, Oroville, California, 2091 Debbie Ann Court, Oroville, California and the person and vehicles of Jess BRASIER. As described below for the various reasons detailed, I have identified these properties as currently being owned, controlled and used by Jess BRASIER as the sites of a indoor and outdoor marijuana cultivation operation, which other law enforcement officers and I have personally observed on numerous recent occasions.

## CONFIDENTIAL SOURCE INFORMATION

21.  During July of 2008, DEA Agents spoke with a confidential source, hereinafter referred to as the CS, regarding the marijuana cultivation and distribution activities of Jess BRASIER of Oroville (Butte County) California.

22.  The CS has one prior felony conviction for a drug related crime. The CS has indicated that he/she is familiar with indoor and outdoor marijuana cultivation operations and marijuana distribution. I noted that the CS's descriptions of such are entirely consistent with the training and experience of myself and DEA S/A Brian

4

Nehring in this area. The CS was and is providing information solely in hopes of receiving monetary compensation. The CS has no pending criminal cases and is not cooperating in hopes of receiving any consideration in any legal matter. The CS's information has been corroborated through prior investigations, the current investigation, and ongoing investigations of other law enforcement agencies, as well as information I have received from several other source of information and from various law enforcement databases. The CS has in the past participated in the controlled purchase of narcotics at agent's direction. For all of these reasons, I consider the CS reliable. The CS related the following information.

23. S/A Nehring spoke with the CS who stated that he/she was a close associate of an individual who had frequented the property located at 57 Nelsier Place, Oroville, California. The CS stated that he/she knew that this property and most of the surrounding property was owned by Jess BRASIER. The CS's stated that his/her associate had related to the CS that BRASIER was actively involved in selling large amounts of marijuana, and that during 2008 he/she had observed BRASIER in possession of hundreds of thousands of dollars in US Currency inside the main residence on this property. The CS stated that he/she was personally aware that BRASIER had a sophisticated surveillance system installed throughout the property which he monitored from a station inside the main residence.

24. The CS stated that his/her associate had described an extensive indoor cultivation operation, which BRASIER was operating on this property, as well as on the surrounding properties that he also claimed to own. The CS stated that he/she had personally observed photographs of the cultivation operation that were taken during 2008, which illustrated the various grow-barns and structures erected on the property. The CS stated that based on the information he/she received, BRASIER was operating several indoor and outdoor cultivation sites on the property including inside a barn and a greenhouse. The CS stated that BRASIER was also operating a cloning operation in the barn which was also used for drying and pruning. The CS stated that the plants he/she observed were several feet tall and there appeared to be multiple hundreds of plants.

25. The CS stated that BRASIER employed several people to assist him in this extensive growing operation including a "foreman," who lived in the trailer behind the greenhouse. The CS stated that these individuals also possessed several assault-style rifles which were located inside the trailer.

26. The CS stated that BRASIER had related to his/her associate that he (BRASIER) owned all of the property along the north side of Nelsier Place from the corner of Lincoln Boulevard to the end of the block where BRASIER's residence was located. BRASIER related that he had also owned the property at the corner (east) of his property, which was the property on the north side of Nelsier Place at the entrance from Lincoln Boulevard, but that he had recently signed this property over to a relative. The CS stated that BRASIER had also led him/her to believe that he was operating a marijuana growing operation on these properties as well.

000

27. I made inquiries through Lexis/Nexis. These inquiries revealed that Jess BRASIER was the owner of Butte County Parcel #036-291-074 (22 Nelsier Place, Oroville, California) and #036-291-074 (57 Nelsier Place, Oroville, California). Examination of maps of this location revealed that these properties are located on the northwest side of this dead-end, one-block cul-de-sac accessed by Lincoln Boulevard. Property records further revealed that Butte County Parcel #036-291-074 listed at 22 Nelsier Place, Oroville, California, was also listed with an address of 6332 Lincoln Boulevard, Oroville, California, which BRASIER was also listed as owning. United States Attorney's Asset Specialist Sheri Swanson informed me that further inquiries had revealed that this parcel had apparently been subdivided and sold by BRASIER. I noted that this appeared consistent with the information provided by the CS regarding BRASIER claiming to having recently deeded over the property at the corner of Nelsier Place and Lincoln Boulevard. ❋

28. Subsequent Lexis/Nexis property records inquiries revealed that BRASIER was also the listed owner of 2091 Debbie Ann Court, Oroville, California (Butte County Parcel #078-040-016) and 6300 Lincoln Boulevard, Oroville, California (Butte County Parcel #910-021-887) as well as additional non-addressed Butte County Parcels variously listed as "off Lincoln Boulevard" and "Debbie Ann Court." An examination of the maps for these location revealed that Debbie Ann Court is a one-address driveway on Lincoln Boulevard that is immediately north of Nelsier Place and borders the properties on Nelsier Place. A review of available assessors maps revealed that the properties listed as being owned by BRASIER appear to constitute a rectangular block along the north side of Nelsier Place and the west side of Lincoln Boulevard at the northwest intersections of these two roads.

29. Inquiries with the California Department of Motor Vehicles (DMV) revealed that BRASIER currently provides 57 Nelsier Place, Oroville, California, as his resident address. Further inquiries with the DMV revealed that BRASIER has alternately registered multiple current vehicles at 57 Nelsier Place, 2091 Debbie Ann Court and 6300 Lincoln Boulevard, Oroville, California.

30. Inquiries with the Pacific Gas and Electric Company revealed that utilities services at 57 Nelsier Place, 22 Nelsier Place and 6300 Lincoln Boulveard, Oroville, California are all currently in the name of Jess BRASIER. Records requested for 6332 Lincoln Boulevard and 2091 Debbie Ann Court have not yet been received.

31. Based on this information, S/A Nehring arranged for California Highway Patrol Officer Troy Marks, a trained aerial observer, to fly over this area on August 14, 2008. At this time, Officer Marks observed and videotaped multiple outdoor marijuana gardens being operated throughout the properties identified as 6332 Lincoln Boulevard, 22 Nelsier Place, 57 Nelsier Place, and 2091 Debbie Ann Court, Oroville, California. S/A Nehring noted that Officer Marks has previously observed and identified live mature marijuana plants on numerous prior occasions during aerial surveillance that were later seized during the execution of search warrants.

❋ Based on our ground and aerial observations we believe that BRAISER
$\aleph$ is currently operating marijuana grows at 22 Nelsier Place, Oroville CA.

32. S/A Nehring and I closely examined the aerial video of this property that was taken by Officer Marks. On this occasion I believe, based upon my training and experience, that the plants observed and photographed by Officer Marks were marijuana plants. These plants were completely consistent in size, structure, color and appearance with marijuana plants S/A Nehring has observed on prior occasions. This videotape illustrated three separate outdoor marijuana gardens on the property identified as 57 Nelsier Place as well as a large opaque greenhouse apparently containing numerous plants; two separate outdoor marijuana gardens on the property identified as 22 Nelsier Place; one outdoor marijuana garden on the property identified as 6332 Lincoln Boulevard; and a large fence-enclosed marijuana garden located on the north side of the pasture located at 2091 Debbie Ann Court, Oroville, California.

33. On this same date, S/A Nehring and I drove west from the corner of Lincoln Boulevard onto Nelsier Place. S/A Nehring and I observed all of these structures and sub-divided parcels were located on the north side of Nelsier Place. S/A Nehring and I also observed that there was clearly a surveillance camera on an apparently motorized, movable platform positioned on a fence just east of the entrance to 57 Nelsier Place. This camera appeared to be facing back out towards Lincoln Boulevard. S/A Nehring and I further noted from our observations and from a review of the video taken by Officer Marks that the property was nearly identical to the description provided by the CS regarding the layout of the property to include the barn, the greenhouse, horse barns, surveillance cameras, etc.

30. On August 25, 2008, S/A Nehring traveled west bound on Nelsier Place from Lincoln Boulevard. S/A Nehring observed that the property and lot at the corner of Nelsier Place and Lincoln Boulevard was accessed by a driveway on the north side of Nelsier Place and that there was a mailbox displaying the numbers 6332. The next apparent separate property on the north side of the street proceeding west bound had a mail box in front of it displaying the numerals 22 on the mailbox. S/A Nehring turned his vehicle around and drove east bound on Nelsier Place. S/A Nehring looked to his left (north) and clearly observed what appeared to be numerous marijuana plants growing behind the green mobile home located on the lot displaying 22 on the mail box.

31. S/A Nehring then proceeded back onto Lincoln Boulevard and observed that the property at 6300 Lincoln Boulevard appeared to be a small enclosed non-operational commercial lot, on which was located a structure in disrepair surrounded by additional empty trailers and mobile-homes, between the entrance to Nelsier Place and the entrance onto Debbie Ann Court immediately to the north. Database and property records had indicated that BRASIER had listed this as a location of a mobile home business. Arial photographs and ground observations confirmed that the small enclosed lot was obviously not open for business and had debris and weeds in front and all the windows into the structure on the lot were covered. S/A Nehring then proceeded to drive onto Debbie Ann Court and noted

7

that there was only one residential structure, a mobile home, at the end of this turnaround driveway and that there was apparently a path leading from the north edge of the property at 57 Nelsier Place leading across the open pasture land to the fenced in area on the north side of the property at 2091 Debbie Ann Court. S/A Nehring noted that this fenced in area was the same location where Officer Marks had earlier videotaped a large outdoor marijuana grow.

32. On or about August 25, 2008, S/A Nehring arranged with a California Highway Patrol aerial spotter Officer Trevor Anders to conduct another fly over of these properties. Officer Anders was able to take still photographs of the property using a digital camera. A review of these photographs revealed that there were still multiple outdoor marijuana gardens being operated throughout the properties identified as 57 Nelsier Place, 22 Nelsier Place, 6332 Lincoln Boulevard, and 2091 Debbie Ann Court, Oroville, California.

33. S/A Nehring noted from his observations of the outdoor marijuana plants and from the photographs that these plants were in various states of growth and that they apparently were not yet at the point which they would be harvested. It has been my experience that outdoor marijuana cultivators tend to follow a set season, that they usually plant in April and harvest in either late September or early October of the year to maximize plant growth. For this reason, I believe that these described marijuana grows are typical and that these plants will be on these properties through at least the end of September 2008.

34. Based on my experience and the experience of other law enforcement officers with whom I have consulted, and the facts set forth above, your affiant believes probable cause exists to search (1) 6332 Lincoln Boulevard, Oroville, California; (2) 22 Nelsier Place, Oroville, California; (3) 57 Nelsier Place, Oroville, California; (4) 2091 Debbie Ann Court, Oroville, California; (5) the person of Jess Vernon BRASIER; and (6) any and all vehicles over which any owner, occupant, or resident of the premises has dominion and control, as determined by the agents at the time of execution of the search warrant by agent's observation of such person operating or accessing vehicle; DMV records showing ownership or use of the vehicle; witness statements establishing ownership or use of the vehicle; or car keys to operate the vehicle found in the actual or constructive possession of such person.

35. I believe there is probable cause that at these locations and on these premises will be found evidence, instrumentalities, and the fruits of violations of Title 21, United States Code, Sections 841(a)(1), to wit, manufacture of and intent to distribute marijuana.

8

36.   It is my belief that those items listed on Attachment B, fully incorporated into this affidavit by reference, may be found at the premises to be searched, as described in Attachment A, fully incorporated herein by reference.   I base this belief on the information set forth herein, my training and experience, and the experience of the law enforcement officers with whom I have consulted.


_____

Amie J. Anderson, Special Agent
Drug Enforcement Administration


Sworn to and subscribed before
me this _15_ ᵗʰ day of September 2008

GREGORY G. HOLLOWS
_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

9

00019

and which they have free and ready access to, narcotics, including but not limited to marijuana, which they intend to distribute. It is my experience that these drug traffickers commonly use these areas (vehicles, residences, properties, etc.) as locations to conceal their narcotics from law enforcement.

12. In my experience, drug traffickers may take or cause to be taken, photographs or videotapes of themselves, their associates, their property, and their product. Such traffickers often maintain photographs and/or videotapes at their residence or in the areas under their control.

13. In my experience, drug traffickers often maintain in their possession and at their residence fictitious identification, including but not limited to, driver's licenses, employment cards, insurance cards, social security cards, certificates of birth, and passports, which are obtained by the traffickers and used in an effort to prevent identification by law enforcement.

14. In my experience, drug traffickers often use vehicles to transport and distribute controlled substances. It has also been my experience that traffickers use vehicles to store controlled substances prior to distribution. During prior investigations, I have observed that drug traffickers will often use vehicles registered in the names of other individuals in an effort to avoid detection by law enforcement.

15. In addition, these traffickers tend to attempt to legitimize their assets by establishing domestic and foreign businesses, by creating shell corporations, by utilizing bank haven countries and attorneys specializing in drafting and establishing such entities employed to "launder" the proceeds derived from the distribution of controlled substances.

16. In establishing these entities, the traffickers often must travel to meetings in foreign countries as well as domestically. As a result of that travel, records are generated reflecting travel by commercial and private aircraft, commercial and private ocean-going vessels, as well as other common carrier(s). Additionally, documents relating to money laundering activities are often kept by drug traffickers at their residences and/or places of business.

17. Further, as part of my training and experience, which has included participating in numerous investigations of clandestine marijuana cultivators as well as the execution of over one hundred search warrants with regards to the cultivation of marijuana, I have found that in addition to the location of marijuana in all various forms, including growing plants, harvested plants or stalks, or drying, dried, or processed marijuana, marijuana seeds and/or marijuana plant clones, there is a large amount of equipment and tools associated with and used for the cultivation (both outdoor and indoor), use, storage, or processing of marijuana, such as:

Irrigation devices, garden hoses, water buckets, five gallon buckets, ground timing devices, electronic watering devices, aerators, PVC pipe, water storage drums, water tanks, hose filter fittings, valves, water pumps, lights, timers, power

3

 **Pacific Gas and Electric Company®**                    **15-Day Notice**

9909909372332000000306310000047664

| Account Number | Service To | Amount Due | Due Date |
|----------------|------------|------------|----------|
| 9909372332-0 | 10/10/2008 | $476.64 | 11/12/2008 |

4496.1.9.1989 1 AV 0.324

JESS V BRASIER
57 NELSIER PL
OROVILLE CA 95966-9575

PG&E
BOX 997300
SACRAMENTO CA
95899-7300

Please return this portion with your payment. Thank you.

GOVERNMENT
EXHIBIT
2



GOVERNMENT EXHIBIT

10.25.2008



GOVERNMENT
EXHIBIT
4

CARDELS 800-783-0399

10.25.2008



GOVERNMENT
EXHIBIT

10.25.2008



GOVERNMENT
EXHIBIT

CARDELS 800-783-0399

6

10.25.2008



GOVERNMENT
EXHIBIT

CARDELS 000-783-0395

7

10.25.2008



GOVERNMENT
EXHIBIT

CAADELS 800-783-0399

10.25.2008



GOVERNMENT
EXHIBIT

CADDELS 800-783-0399

10.25.2008



GOVERNMENT
EXHIBIT

CARROLLS 800-783-0399

10.25.2008



GOVERNMENT
EXHIBIT

11

CARDELS 800-783-0399

10.25.2008



GOVERNMENT
EXHIBIT

12

CARDEL5 800/783-0399

10.25.2008



GOVERNMENT
EXHIBIT
B

10.25.2008



GOVERNMENT
EXHIBIT

14

10.25.2008



GOVERNMENT
EXHIBIT

15

10.25.2008



GOVERNMENT
EXHIBIT
16

10.25.2008



GOVERNMENT
EXHIBIT

10.25.2008



GOVERNMENT
EXHIBIT

10.25.2008



10.25.2008

